UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY BILLING, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 13-cv-11273 |
| ) | |
| MARTHA'S VINEYARD PUBLIC ) | |
| CHARTER SCHOOL, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                    **January 8, 2014**

### I.   Introduction

Plaintiff Emily Billing ("Billing") brings this action for breach of contract and deprivation of rights against Defendants Martha's Vineyard Public Charter School (the "School"), the School's Board of Trustees and the School's Director, Robert M. Moore (collectively, the "Defendants"). Compl., D. 15. The Defendants have now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 9. For the reasons discussed below, the Court DENIES IN PART and ALLOWS IN PART the motion to dismiss.

### II.   Standard of Review

Taking the facts alleged in the complaint as true, the Court will dismiss any claim that fails to provide sufficient facts to demonstrate "'more than a sheer possibility'" that the plaintiff is entitled to relief. García-Catalán v. United States, 734 F.3d 100, 102–03 (1st Cir. 2013)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must plead enough facts to state a claim that is "'plausible on its face.'" García-Catalán 734 F.3d at 102–03 (quoting Iqbal, 556 at 678). "[T]he complaint must contain more than a rote recital of the elements of a cause of action." García-Catalán, 734 F.3d at 103 (citation and quotations omitted). In determining plausibility, the Court "must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotations omitted).

### III. Procedural History

Billing filed her complaint in the Dukes County Superior Court on or about February 21, 2013. D. 1. The Defendants removed this case to this Court on May 28, 2013. Id. The Defendants have now moved to dismiss the complaint. D. 9. After a hearing on November 7, 2013, the Court took this matter under advisement. D. 18.

### IV. Factual Allegations

This summary is based upon the allegations by Billing in the complaint, D. 15, which the Court must accept as true for the purposes of this motion. García-Catalán, 734 F.3d at 102–03. Billing worked as an on-call substitute teacher for the School during the 2009-2010 and 2010-2011 school years. Compl. ¶ 6. On July 25, 2011, the School and its Director, Defendant Robert Moore ("Moore" or "the Director"), hired Billing as a teaching assistant for the 2011-2012 school year. Id. ¶¶ 5, 7. Billing signed an Employment Contract ("the Contract") the same day. D. 15 at 12. The term of the Contract ran from September 1, 2011 to June 30, 2012. Id. ¶ 7. The Contract included a provision stating: "[t]he Director may terminate this contract at any time during the contract period if he determines, in his judgment, the program is not working to meet the needs of the students." Id.

The complaint alleges that in early September 2011, the School received several anonymous telephone calls alleging that Billing had a "past drug abuse problem" and, for this reason, should not be teaching at the School. Compl. ¶ 11. On September 2, 2011, Moore and the School's Vice Director, Susan DiRubio, informed Billing in a private meeting that they were "looking into" her criminal history. Id. ¶ 12. On September 5, 2011, Billing received a voicemail from Moore instructing her to meet him at the School the following morning. Id. ¶ 14. When Billing arrived for the meeting, Moore handed her a termination letter, which stated that the School "will not be able to employ you for the 2011-2012 school year due to legal charges filed against you in the State of Colorado in 2008." Id. ¶ 15. When Billing questioned Moore about her termination, he told her that the reason she was being terminated was "because it 'is just not good for the community.'" Id. School employee Marie Larsen ("Larsen") also attended this meeting, over Billing's objection, about the discussion of Billing's employment. Id. ¶ 16. Moore told Billing that he was allowing Larsen to be present because she "'was a 25-year sober recovered addict.'" Id. Billing offered to provide the School with information addressing its concerns, particularly the fact that the charge against her was dismissed. Id. ¶ 17. Billing also requested a hearing. Id. At the end of the meeting, Moore promised to call Billing to discuss the matter further and told Billing that she could use her sick days under the Contract until the issue was resolved. Id. ¶ 18.

On September 7, 2011, Moore called Billing and told her: "'I am waiting to speak with the Board of Trustees, and we can set up a meeting because you do deserve to have your voice heard. I will be there and you can come and talk to them.'" Id. ¶ 19. Moore instructed Billing not to report for work the next day. Id. While Billing did not agree with this decision, she did not report for work. Id.

On September 10, 2011, Billing received a voicemail from Moore stating that he would be meeting with the president and vice-president of the Board on September 12 to discuss Billing's employment. Id. ¶ 20. Moore told Billing he would contact her after the meeting. Id. On September 13, 2011, Moore told Billing that she could not meet with the Board and that his decision to terminate her was final. Id. ¶ 21.

## IV.   Discussion

### A.   The Plaintiff Has Alleged Facts Sufficient for a Breach of Contract Claim

Billing has asserted a breach of contract claim against all of the Defendants for failure to comply with the terms of the Contract. Compl. ¶¶ 24–28. To sustain a breach of contract claim, Billing must show that the parties reached a valid and binding agreement, the Defendants breached the terms of the agreement and Billing suffered damages as a result of the breach. Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999).

At issue here is the second element for the cause of action – whether the Defendants breached the contract by terminating Billing. The Defendants argue that the Plaintiff has not pleaded sufficient facts to support a breach of the contract, given that Paragraph 9 of the Contract allowed the Director to "terminate [the] contract at any time during the contract period if he determines, in his judgment, the program is not working to meet the needs of the students." See D. 15 at 12.

Although, as the Defendants contend, Paragraph 9 "explicitly permits Director Moore to terminate the contract . . . based solely on what he determines 'meet[s] the needs of the students' according to 'his judgment,'" D. 10 at 4–5 (citing Compl.), it cannot be said that Billing has failed to allege a plausible breach of contract claim where there is a factual dispute about whether the Director's conduct was within the bounds of discretion afforded him under the

4

Contract. Even by the plain language of the Contract, this discretion is not boundless. That is, the Director must make a specific determination—i.e., according to the terms of the Contract the Director must find that the "program" (undefined in the contract) is not working to meet the students' needs—and that determination, Billing alleges, was missing here. D. 12 at 5–6 (citing Compl. ¶ 15). Against this backdrop, Billing has stated a plausible claim that is best resolved on a developed factual record. Accordingly, the Court DENIES the motion to dismiss the breach of contract claim.

### B. The Plaintiff Has Alleged Facts Sufficient for a Procedural Due Process Claim Under 42 U.S.C. § 1983

Billing's second cause of action alleges a violation of procedural due process pursuant to 42 U.S.C. § 1983. Compl. ¶¶ 29–33. To state a procedural due process claim, Billing must allege that she was deprived of a constitutional property or liberty interest without due process of law. Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992).

#### *1. Billing has a property interest in continued employment.*

Billing alleges that the termination of her employment deprived her of a protected property interest. Compl. ¶ 32. "It is well established that a public employee has a constitutionally protected property interest in [her] continued employment when [s]he reasonably expects that [her] employment will continue." King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997) (citing Cummings v. South Portland Hous. Auth., 985 F.2d 1, 2 (1st Cir. 1993)). At-will employees, or those who can be fired without cause, do not have such reasonable expectation. King, 116 F.3d at 969 (citations omitted). Whether an employee is an at-will employee is determined by state law, id., here, as a matter of Massachusetts law.

In Massachusetts, employees are generally not considered "at-will" when their employment contracts specify a definite period of time. Jackson v. Action for Boston Cmty.

5

Dev., Inc., 403 Mass. 8, 9 (1988); Lemire v. Silva, 104 F. Supp. 2d 80, 95 (D. Mass. 2000) (interpreting Massachusetts law). Here, the term of the Contract ran from September 1, 2011 to June 30, 2012. Compl. ¶ 7. Billing had a reasonable expectation that her employment would continue until June 30, 2012.

The Defendants argue that Billing did not have a protected property interest in her continued employment because the Contract allowed Moore to terminate her employment at his discretion. D. 10 at 6–8. But the Court concludes that, as discussed above, the specified period of time included in the Contract gives rise to a protected property interest in employment until June 30, 2012. See Concepción Chaparro v. Ruiz-Hernández, 607 F.3d 261, 266 (1st Cir. 2010) (holding that a one-year employment term with a Puerto Rican governmental body was a protected property interest); Moore v. Warwick Pub. Sch. Dist. No. 29, 794 F.2d 322, 326 (8th Cir. 1986) (affirming ruling that plaintiff had a protected property interest in continued employment by virtue of a one-year contract); see also Rodriguez de Quinonez v. Perez, 596 F.2d 486, 489 (1st Cir. 1979) (noting, even when an employment contract provides an employer the discretion to terminate, "existence of a specific term [of employment]" and other factors militate against finding that the contract does not provide "sufficient expectancy of continued employment to constitute a protected property interest").

2. *Billing has properly alleged a deprivation of procedural due process.*

"'The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner.'" Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 222 (D. Mass. 2005) (quoting Matter of Kenney, 399 Mass. 431, 435 (1987)). "It is well established that in every case where a protected property interest is at stake, the Constitution requires, at a minimum, some kind of notice and some kind of opportunity to be heard." Clukey

v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013) (and cases cited).  According to Billing, she was never given notice of the adverse action (i.e., before the meeting at which she was handed the termination letter) and never received an opportunity to be heard, either before or after the termination.  See Compl. ¶ 19; see Clukey, 717 F.3d at 60 (concluding that where the plaintiff had a property interest in his right to be recalled to public employment and where plaintiff alleged that the Town provided no "notice of any kind whatsoever" of its decision not to recall him states a plausible procedural due process claim under Section 1983 and should not have been dismissed).  Billing also alleges that she requested a "hearing and an opportunity to offer information in her defense that would dispute the reasons given by Moore to support his termination of her employment."  Compl. ¶ 17.  She further contends that Moore told Billing he would arrange a meeting with the Board, but later reneged on this promise.  Compl. ¶¶ 19–22.  These facts are sufficient to survive a motion to dismiss for failure to state a claim.[1]

For these reasons, the Court DENIES the Defendants' motion to dismiss Billing's procedural due process claim.

### C.     The Court Will Allow the Plaintiff to Amend her Massachusetts Civil Rights Act Claim

Billing alleges that the Defendants violated her rights under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, § 11I ("MCRA").  Compl. ¶¶ 34–39.  "To establish a claim under the [MCRA], the plaintiff[ ] must prove that (1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'"  Swanset Dev. Corp. v. City of Taunton,

---

[1] Billing also claims that she had a liberty interest in her "good name and reputation."  D 12 at 8.  Because the Court finds that Billing's Section 1983 claim survives based upon a protectable property interest, it need not reach whether she also had a liberty interest.

423 Mass. 390, 395 (1996) (citing Mass. Gen. L. c. 12, § 11I). "'Threat' in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994). "Intimidation" "involves putting in fear for the purpose of compelling or deterring conduct." Id. "Coercion" is "the use of physical or moral force to compel [another] to act or assent." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565 (1995) (citation omitted). Recognizing that the "threats, intimidation or coercion" requirement "was specifically intended to limit liability under the [MCRA]," id. at 565–66, the Court finds that the Plaintiff has not met her pleading burden for this cause of action, as her complaint provides no allegations sufficient to meet the standards articulated above for threat, intimidation or coercion.

Billing has alleged that when she showed up for a meeting to discuss her drug charge with Moore, he handed her a termination letter. Compl. ¶ 15. Both Moore and another School employee, Larsen, participated in this meeting. Id. ¶ 16. When Billing protested that Larsen should not be present, Moore stated that he would allow her to be there, despite the disclosure of Billing's "confidential and personal information" because Larsen was a "25-year sober recovered addict." Id. While these facts alone are not sufficient to plead threats, intimidation, or coercion necessary for MCRA liability, Billing has contended in her opposition to the pending motion that "the gratuitous disclosures in the meeting made it impossible for Billing to escape stigma, and likely ruined her chances of obtaining a professional position on Martha's Vineyard, especially given that the island is a small 'close-knit' community . . . ." D. 12 at 9. It is not clear that these additional allegations would arise to the level of threats, intimidation or coercion by the Defendants necessary to state a MCRA claim where such threats, intimidation or coercion must be the means by which her constitutional rights were interfered with (or were attempted to be

interfered with). See Longval v. Comm'r of Correction, 404 Mass. 325, 333 (1989) (citation and quotations omitted) ("A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]"). But the Court cannot say it would be futile for Billing to amend as to this claim. See Fed. R. Civ. P. 15(a). Therefore, the Court ALLOWS the motion to dismiss as to Count Three, but does so without prejudice to permit Billing to amend her complaint as to this count.

### D. The Court Dismisses the Plaintiff's Invasion of Privacy Claim as to the School and the Board, But Not as to Moore

Finally, Billing claims that the Defendants violated her right to privacy pursuant to Mass. Gen. L. c. 214 § 1B ("§ 1B"). Compl. ¶¶ 40–43. Section 1B provides that "'[a] person shall have a right against unreasonable, substantial or serious interference with his privacy.'" Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517 (1991) (quoting statute).[2] "To determine whether [an] inquiry amounts to a violation of c. 214, § 1B . . . 'the employer's legitimate interest in determining the employee['s] effectiveness in [her] job[] should be balanced against the seriousness of the intrusion on the employee['s] privacy.'" O'Connor v. Police Com'r of Boston, 408 Mass. 324, 330 (1990) (quoting Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 520 (1984). The parties do not dispute that the School and the Board are immune from a § 1B claim under the Massachusetts Tort Claims Act, Mass. Gen. L. c. 258, §

---

[2]The Defendants are correct in asserting that information in the public domain is not considered private and cannot form the basis of a § 1B claim. See Brown v. Hearst Corp., 862 F. Supp. 622, 631 (D. Mass. 1994), aff'd, 54 F.3d 21 (1st Cir. 1995). However, the Court cannot conclude, based upon the allegations in the complaint, that the only information discussed during the meeting in the presence of at least one other person was entirely in the public domain (i.e., criminal charges filed in Colorado, D. 10 at 10–11 (citing Compl. ¶¶ 15, 16)) where it appears that the School's inquiry and concerns were allegedly prompted by anonymous phone calls regarding Billing's alleged past history of drug abuse, see Compl. ¶ 11, which does not necessarily arise merely from information in any public record of criminal charges. See D. 12 at 11.

10(c) ("MTCA"). The Court agrees that these two Defendants are immune from suits arising from intentional torts, such as invasion of privacy, pursuant to the MTCA. See Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 284–85 (1985) (affirming dismissal of invasion of privacy claim against public employer). A public employee, however, may still "be personally liable for [his] intentionally tortious conduct under G.L. c. 214, § 1B." Nelson v. Salem State Coll., 446 Mass. 525, 537 (2006); see also Spring, 394 Mass. at 286 n. 9. Therefore, the Court ALLOWS the motion to dismiss Count Four as to the School and the Board and will discuss the merits of Billing's invasion of privacy claim only as to Moore.

As discussed above, Billing has alleged that over her objections, Moore disclosed confidential information to Larsen, for no apparent reason other than because Larsen was a "25-year sober recovered addict." Compl. ¶ 16. The facts alleged allow the Court to make a reasonable inference that disclosing private information to Larsen could plausibly constitute an unreasonable and substantial or serious interference with Billing's privacy. See also Lemire, 104 F. Supp. 2d at 93–94 (finding that a jury should consider whether an alleged privacy invasion was unreasonable and serious or substantial).

Accordingly, the Court DENIES the motion to dismiss Count Four as to Moore.

V. **Conclusion**

For the aforementioned reasons, the Court DENIES the motion to dismiss Counts One and Two; ALLOWS the motion to dismiss Count Three, but will permit Billing to amend her complaint within 14 days of this Order as to this claim; ALLOWS the motion to dismiss Count Four against Defendants Martha's Vineyard Public Charter School and its Board of Trustees, but DENIES the motion to dismiss Count Four as to Defendant Moore.

**So Ordered.**

<u>/s/ Denise J. Casper</u><br>
United States District Judge